IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PATRICK PARKER,**<br><br>　　　　　　**Plaintiff,**<br><br>v.<br><br>**MICHAEL RINGHAUSEN and**<br>**JERSEY COUNTY, ILLINOIS,**<br><br>　　　　　　**Defendants.** | Case No. 3:19-cv-948-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss for Failure to State a Claim (Doc. 10) filed by Defendants Michael Ringhausen and Jersey County, Illinois. For the reasons set forth below, the motion is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

This is a wrongful termination action arising out of the termination of Plaintiff Patrick Parker from his employment as a law enforcement officer at the Jersey County Sheriff's Department (Doc. 1).

Parker was hired by the Jersey County Sheriff's Department under the direction of Sheriff John Wimmersberg on July 16, 2018 (Doc. 1). In November 2018, Sheriff Michael Ringhausen was elected for the Sheriff position (*Id.*). Parker claims that Ringhausen began seeking revenge against officers who did not support his political campaign (*Id.*). Parker did not support Ringhausen's campaign (*Id.*).

On May 14, 2019, Parker met with Ringhausen in his office, and Ringhausen

informed Parker that he was not writing enough tickets or filing enough felony cases (*Id.*). Ringhausen then compared the number of tickets issued by Sheriff's Deputy Justin Decker to the number of tickets issued by Parker (*Id.*). Parker further claims that Ringhausen said he could terminate Parker for any reason that pleases him (*Id.*). Ringhausen then terminated Parker's employment (*Id.*). Parker claims he did not receive any write-up or disciplinary action prior to the meeting (*Id.*).

Parker alleges Ringhausen's actions violated Illinois law, which prohibits quotas for "the purpose of evaluating a law enforcement officer's job performance… [or to] compare the number of citations issued by the law enforcement officer to the number of citations issued by any other law enforcement officer who has similar job duties" (*Id.*). 55 ILCS 5/5-1136. Parker further alleges that, as Sheriff, Ringhausen was the final policy maker for Jersey County and that Ringhausen "engaged in conduct that was objectively unreasonable, undertaken intentionally, with malice and reckless indifference to the rights of others, and in total disregard to the laws of the State of Illinois" (*Id.*). Parker also alleges that Ringhausen was acting within the scope of his employment at all times relevant (*Id.*).

Parker alleges that Ringhausen implemented widespread policies and practices of using his position as Sheriff to reward supporters with promotions and jobs, and to punish those who did not support his campaign (*Id.*). Parker further alleges that Jersey County has implemented policies and practices of failing to supervise its office holders for violations of the law (*Id.*). Parker claims that Jersey County and the Sheriff's Department created a system where its employees refuse to report misconduct, including

the misconduct at issue in this case (*Id.*). Parker also claims that Jersey County failed to train, supervise, and discipline its officers and ratifies the kind of misconduct that Ringhausen committed against Parker (*Id.*).

Parker brings three counts in his Complaint (*Id.*). Count I asserts a wrongful termination claim pursuant to 42 U.S.C. § 1983 against all Defendants (*Id.*). Count II asserts an Illinois State Law Claim for Retaliatory Discharge against all Defendants (*Id.*). Count III asserts an Intentional Infliction of Emotional Distress claim against Ringhausen individually (*Id.*).

Defendants filed a Motion to Dismiss for Failure to State a Claim, seeking the dismissal of Parker's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 10). Defendants assert that: Parker failed to allege a property interest in his employment; 55 ILCS 5/5-1136 does not create a cognizable property interest in Parker's employment; Parker has failed to sufficiently plead retaliatory discharge; Sheriff Ringhausen was not a final policy maker for Jersey County; and Parker failed to sufficiently allege extreme and outrageous conduct necessary to succeed on a claim for intentional infliction of emotional distress (*Id.*).

## Legal Standard

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). When ruling on a motion to dismiss, a federal court may consider documents attached to the pleadings without converting the motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

## ANALYSIS

### I. Count I

Defendants first assert that Parker's wrongful termination claim is insufficiently pled, and Count I should be dismissed (Doc. 10). Defendants contend that Parker's Complaint appears to allege a violation of Parker's procedural due process rights, yet it fails to allege a cognizable property interest in his employment. (*Id.*). Parker asserts that it is not necessary to allege a cognizable property interest in his employment due to the Supreme Court's decision is *Elrod v. Burns*, in which the Court held that public employees are generally protected from being terminated based on their political beliefs (Doc. 12). *Elrod v. Burns*, 427 U.S. 347 (1976).

To plead a claim for municipal liability under 42 U.S.C. § 1983, plaintiffs need not allege a violation of procedural due process rights. A municipality is liable under Section 1983 if the deprivation of constitutional rights is caused by a municipal policy or custom.

*Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). "[A] plaintiff may demonstrate the existence of municipal policy or custom in one of three ways: proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Id*. Whether someone is a final policymaker under Section 1983 is a matter of state or local law. *Id*.

The Seventh Circuit has previously found that Illinois Sheriffs are the final policymakers for sheriff's departments. *See Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) (holding that the sheriff is a policymaker for the county sheriff's office, not for the county itself)). It is also well established that a county should not be held liable for a sheriff's actions in Illinois. *See White v. Hertz*, No. 07-CV-716-MJR, 2008 U.S. Dist. LEXIS 62307, at *10-11 (S.D. Ill. Aug. 14, 2008) ("…Madison County is correct that any policies promulgated by Hertz cannot be attributed to Madison County, and Madison County cannot be held liable under a respondeat superior theory"); *See, e. g., Franklin v. Zaruba*, 150 F.3d 682, 685-86 n. 4 (7th Cir. 1998) (finding that county cannot be liable under Section 1983 for sheriff's policies); *See Moy v. County of Cook*, 159 Ill. 2d 519, 640 N.E.2d 926, 929 Ill. Dec. 776 (1994) ("The county is given no authority to control the office of the sheriff."); *see also Horstman v. County of DuPage*, 284 F.Supp.2d 1125, 1131-32 (N.D. Ill. 2003) ("Although a county board may alter or impose additional duties upon county officers, the board may not 'alter the duties, powers and functions of county officers that are specifically imposed by law.'"). Thus, because the Sheriff is the final policymaker for the Sheriff's Department, the Department itself can be liable, but not the County. *See Cooper*

*v. Monroe Cty. Sheriff's Dep't*, No. 11-310-GPM, 2011 U.S. Dist. LEXIS 137202, at *13-15 (S.D. Ill. Nov. 29, 2011) ("Kelley had final policy-making authority for the Department and that the wrongful conduct alleged in the complaint occurred pursuant to Kelley's illegal policies and practices. Therefore, Cooper has stated a claim for relief under Section 1983 against the Department."). A county cannot be liable in its own right based on the conduct of the Sheriff. *See Brown v. Gulash*, No. 07-cv-370-JPG-PMF, 2011 U.S. Dist. LEXIS 29766, at *47 (S.D. Ill. Mar. 22, 2011). Nevertheless, the County is still a proper defendant because it will ultimately be responsible for paying any judgment against the Sheriff. *See id.* ("'a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer…'").

This does not mean that Ringhausen cannot be held liable. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

Here, Parker alleges that he was targeted by Ringhausen because he did not support Ringhausen's political campaign (Doc. 1). Parker alleges that Ringhausen: informed Parker that Ringhausen could fire Parker for any reason Ringhausen wants; told other officers that he was looking for any reason to fire Parker; informed Parker that Ringhausen would be performing surveillance on Parker during Parker's shifts; refused to communicate with Parker unless it was to threaten Parker; and used improper employment standards to justify Parker's termination (*Id.*). Parker was then terminated (*Id.*). Parker outlined claims supporting that his termination was based at least in part on

a constitutional violation.

This Court has already established that basing employment decisions on political motivations violates public employees' constitutional rights. *Cooper v. Nameoki Twp.*, No. 14-CV-634-SMY-SCW, 2015 U.S. Dist. LEXIS 115339, at *3 (S.D. Ill. Aug. 31, 2015) ("Basing employment decisions on political motivation, with certain narrow exceptions, violates an individual's First Amendment rights."); *Gossett v. Walker*, No. 06-0600-DRH, 2008 U.S. Dist. LEXIS 84642, at *11-12 (S.D. Ill. Sep. 10, 2008) ("'…[P]ublic employees may not be made to suffer adverse job actions because of their political beliefs'…It is therefore 'well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment…'"); *Wilkie v. Obourn*, Case No. 00-cv-4293-JPG, 2002 U.S. Dist. LEXIS 963, at *12 (S.D. Ill. Jan. 7, 2002) ("[I]t is a violation of the First Amendment to make public employment hiring decisions on the basis of political patronage…"). These decisions were based in part on *Elrod v. Burns*.

Thus, it is possible to infer from the allegations of Parker's complaint that Ringhausen had final policy-making authority for the Department and that the wrongful conduct alleged in the complaint occurred pursuant to Ringhausen's illegal policies, practices, and specific individual conduct. Therefore, Parker has stated a claim for relief under Section 1983 against Ringhausen. The Court will not dismiss Jersey County, but will limit its liability to paying any damages awarded.

## II. Count II

Defendants next assert that Count II of the Complaint must be dismissed because Parker has failed to sufficiently plead retaliatory discharge (Doc. 10). Defendants contend

that Parker failed to allege a protected activity and failed to allege a violation of public policy (*Id.*).

"To state a claim for retaliatory discharge under Illinois law, a plaintiff must show: (1) he has been discharged; (2) in retaliation for his activities; (3) the discharge violates a clear mandate of public policy." *Robinson v. Morris*, No. 18-cv-0164-JPG, 2018 U.S. Dist. LEXIS 79106, at *10 (S.D. Ill. May 10, 2018). Illinois employers may generally terminate employees at any time for any reason because Illinois is an at-will employment state. *Mollet v. St. Joseph's Hosp. Breese, of the Hosp. Sisters of the Third Order of St. Francis*, No. 16-cv-0293-MJR-DGW, 2017 U.S. Dist. LEXIS 38795, at *4 (S.D. Ill. Mar. 17, 2017). "Retaliatory discharge claims have been recognized as a narrow exception to the general rule in two types of cases: those involving retaliation for filing a worker's compensation claim and those involving an employee terminated for reporting an employer's allegedly criminal activity." *Id*. Illinois Appellate courts have not extended the exception beyond these two categories. *Id*.

Here, Parker has not brought any worker's compensation claims, and he has not alleged any criminal conduct on the part of Defendants. Therefore, Parker's retaliatory discharge claim must be dismissed.

### III. Count III

Defendants assert that Parker has failed to sufficiently allege extreme and outrageous conduct necessary to succeed on a claim for intentional infliction of emotional distress ("IIED") (Doc. 10). Parker asserts that his employment as a police officer invoked more stress than a normal employment position (Doc. 12).

To plead a claim for IIED, a plaintiff must allege (1) the defendant engaged in "truly extreme and outrageous" conduct; (2) the defendant either intended the conduct inflict severe emotional distress, or knew that there was a high probability the conduct would cause severe emotional distress; and (3) the conduct, in fact, caused the plaintiff severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809, 127 Ill. Dec. 724 (1988). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id*.

"For conduct to be extreme and outrageous it must go 'beyond all bounds of decency' and be 'considered intolerable in a civilized community.'" *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (quoting *Lopez v. City of Chi.*, 464 F.3d 711, 721 (7th Cir. 2006)). The Illinois Supreme Court uses three factors to evaluate the outrageousness of a defendant's conduct. *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003). "First, the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme." *Id*. Second, "courts must consider whether the defendant reasonably believed its objective was legitimate." *Id*. And third, "courts must consider whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Id*. (internal citations and quotations omitted).

Liability for emotional distress is more constrained in the employment context. *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). "This is because 'personality conflicts and questioning of job performance are unavoidable aspects of employment and . . . frequently, they produce concern and distress.'" *Id*. (quoting *Van Stan v. Fancy Colours*

*& Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). Thus, "courts are hesitant to conclude that conduct is extreme and outrageous in the employer-employee context unless an 'employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-relates stress caused by the average work environment.'" *Richards*, 869 F.3d at 567 (quoting *Naeem*, 444 F.3d at 605).

Here, Parker's allegations do not establish the type of extreme and outrageous conduct that is actionable for an IIED claim. Parker asserts he was terminated because he did not support Ringhausen's political campaign and because of a violation of Illinois law (Doc. 1). However, wrongful termination, by itself, is not outrageous enough to support an IIED claim. *Fang v. Vill. of Roselle*, No. 95 C 5175, 1996 U.S. Dist. LEXIS 9512, 1996 WL 386556, at *3 (N.D. Ill. July 5, 1996) ("[I]t is clearly established that wrongful discharge, alone, even where such a discharge is malicious, does not constitute grounds for a claim of intentional infliction of emotional distress against an employer."). Rather, wrongful discharge is found to support an IIED claim only when it is accompanied by truly egregious conduct. *See, e.g., Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 561 N.E.2d 1245, 149 Ill. Dec. 549 (1st Dist. 1990) (the plaintiff stated an IIED claims where she alleged her employer offered her money for sex; fired her when she refused; threatened to kill her, rape her, and take legal action to challenge the custody of her child; and attempted to

disrupt her new employment relationship); *Anderson v. Viskase Corp.*, No. 92 C 1057, 1992 WL 211076, at *1 (N.D. Ill. Aug. 25, 1992) (the plaintiff stated an IIED claim where he alleged he was "berated, yelled at, and suspended from his job as a result of his missing work for treatment of skin cancer contracted on the job and for missing work to recover from two extremely serious heart attacks that occurred on the jobs"; was carried out on a stretcher as a result of those heart attacks; and told that "he must ignore his Doctor's orders and return to work or lose his job"); *Naeem*, 444 F.3d at 606 (the plaintiff stated a claim where managers forced her to climb up an unstable metal stairway to hook up computer equipment during her pregnancy; sabotaged her computer to deny her access and alter her files; publicly criticized her work during meetings with other supervisors; moved her office and files, causing her to be unable to locate paperwork; increased her workload, knowing she would not be able to meet the deadlines; and then terminated her).

Parker simply has not met his burden of alleging extreme and outrageous conduct. Ringhausen's alleged actions do not come close to the level of outrageousness that is necessary to state a claim for IIED. *See Brackett v. Galesburg Clinic Ass'n*, 293 Ill. App. 3d 867, 870-71, 689 N.E.2d 406, 408, 228 Ill. Dec. 534 (Ill. App. Ct. 1997) (dismissing IIED claim where the plaintiff was terminated after 44 years of employment; the termination was not according to policy; she was not given a reason for her termination; she was escorted out of the building and not allowed to collect her belongings; and the employer hinted she was terminated for something "really bad"); *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139, 146 (N.D. Ill. 1984) (dismissing IIED claim based on wrongful discharge,

age discrimination, refusal to pay severance pay, and refusal to transfer the plaintiff after promising to do so); *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (affirming dismissal of IIED claim where the plaintiff claimed she was discriminated against, reprimanded without cause, forced out of a management position, falsely accused of having poor sales, had her telephone calls monitored through the use of an eavesdropping device, and was threatened with discipline); *Thomas v. Coach Outlet Store*, No. 16 C 3950, 2017 U.S. Dist. LEXIS 11136, 2017 WL 386656, at *5 (N.D. Ill. Jan. 27, 2017) (dismissing IIED claim where the manager falsely accused the plaintiff of theft, petted her down, searched her belongings, and terminated her).

Ringhausen's actions also do not constitute extreme and outrageous conduct, even considering Parker's susceptibility to emotional distress because of the job's stress level. "[T]he defendant's knowledge of the plaintiff's susceptibility does not alter the objective standard by which a court judges whether conduct is outrageous." *Van Stan*, 125 F.3d at 569. Instead, "where a defendant knows that a plaintiff is susceptible to emotional distress, we must determine whether an average member of the community would consider the defendant's conduct extreme and outrageous under all of the circumstances of the case, including the defendant's knowledge of the plaintiff's susceptibility." *Id*. Under this standard, even if Ringhausen knew Parker was sensitive to emotional distress because of the stresses of being a police officer, the alleged conduct does not support a claim for IIED. Accordingly, Count III is dismissed for failure to state a claim.

CONCLUSION

For the reasons set forth above, the Motion to Dismiss for Failure to State a Claim (Doc. 10) filed by Defendants Michael Ringhausen and Jersey County, Illinois, is **GRANTED in part** and **DENIED in part**. Counts II and III are **DISMISSED with prejudice**. Defendant Jersey County's liability shall be limited to payment of any judgment awarded in Plaintiff's favor.

**IT IS SO ORDERED.**

DATED:   April 20, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**